Good morning. May it please the court, Michael Tanaka, Deputy Federal Public Defender, appearing on behalf of Steven Cervantes. There are two issues in this case. I'm going to address primarily the search and suppression issue, and if I have time I'll circle back to the supervised release condition. Here, the district court upheld the search of Mr. Cervantes solely because he was on probation and was subject to a search condition. A search condition by itself clearly does not give the police carte blanche to do any search at any time they want, and it doesn't strip someone on probation subject to a search condition of all their Fourth Amendment rights. Can I ask you, you've said now twice that he was on probation, your client was on probation. Isn't it mandatory supervision or doesn't it have some other term that actually makes it more like parole rather than probation? As I understand, California's realignment scheme, Your Honor, he was sentenced to two years of custody with one year of mandatory supervision. So they call it a supervised release in California? No, they call it mandatory supervision. Which is very much like the federal system. Which is like the federal supervised release, which is not quite probation. Not quite, because it's the kind of case where before realignment, because this is a relatively minor crime, it well could have been felony probation. He got a time served sentence, and then a year of supervision is almost akin to a year of supervision as a condition of probation. But we're under the Samson line of cases, not the Knights line of cases. Do you agree with that? No, I don't agree with that. Okay, why? Because the Samson, the parole case? Right. Yes. Parole. It's like parole, isn't it? But it's not on parole. Even supervised release is not like parole. Parole in California is a continuation of custody. Parole is an extension of one's prison term. And that's what I thought this mandatory supervision was. It was the last year or so of the time he otherwise would have served in custody. He's required to serve under these conditions of supervision, no? I respectfully disagree. On the circumstance of this case, it's much more akin to probation. Well, you're calling it akin, circumstances of this case. But isn't Judge Watford correct about what this is, what we're dealing with? I don't believe so, Your Honor. You don't believe so? But why not, Mr. Tsenada? Because parole, again. Leave aside the labels and get to the substance of what it was. Well, with due respect, the labels matter because parole is an extension of the prison term. Under California law, that's the way it is. The parole is supervised by the Department of Corrections. Someone is free to say, I don't want parole. I want to serve the rest of my time in custody. This is exactly akin in this particular case. And the realignment didn't change that at all. All it did was it increased the number of offenses, and it made it mandatory in some cases, to where someone could not be subject to prison. But nonetheless, this is like probation because it was a minor offense. It was a case where he could have gotten probation before. Therefore, there's no intent in California to change a condition, a supervision, following a short term of custody in county jail. Then what was it supposed to do? I mean, why did things change? I spent 17 years in the system. This is nothing like the probationary sentences, thousands of them that I was involved with. Again, I thank you, Judge Strzok. This is exactly like those cases where you send someone on felony to felony probation with a term in county jail and supervision to follow. There's no practical difference in this matter. California did not change what this kind of supervision was meant to. It didn't transform this into custody, into constructive custody. Then what did it do? At heart, what it did was it made these sentences where it required judges to sentence these people to county jail, to serve their time in county jail, rather than state prison. Go ahead. That segment of people who otherwise would have been sentenced to state prison. It left alone, though. It did not change and could not have changed the segment of folks who would not have been sentenced to state prison under the old regime would have gotten county jail and probation. That's what this is. In this case, that's what this is. The whole number of people subject to this supervision are just like those old probationers. California, the realignment was to get people out of prison, but it was not. It didn't mean to encompass people who otherwise would have been sentenced to. Maybe it doesn't matter because the situation you have here is a very explicit ability to search premises under his control. Even if you don't rely solely on the search term itself, but you're looking at the context of the search term, which is the premises, and that it's premises, it's not a cell phone like in some of the cases. Laura. Why isn't it? Yeah, Laura was the cell phone case. Why isn't it reasonable? Whether you call it special California probation, special California release, special whatever. Because even with a search condition that extends to premises, there has to be some rationale, has to have some level of reasonableness. And the difference between this case and pretty much every other case is that, one, there is no suspicion. The officer never said once he suspected, reasonable or not, Mr. Cervantes of committing any crime. Two, this does not look at all like something done in furtherance of probation. It's not some random search by a probation officer. It's not even a chance encounter on the street where the officer acts as sort of an adjunct to probation. Now that I have you here, show me your pockets. Let's see if there's anything in there. Let's see if you're up to no good. It's none of those. Did they consider what his record was, what his past had been? You know, if he had said that, this would be a closer case. If he had said that I looked and I found something beyond the bare fact that he was on probation and subject to a search condition, I found that he had passed drug offenses, passed counterfeiting offenses, maybe, maybe. But we don't have that in this record. The only reason he gave for going back to this hotel room and searching was that he was subject to a search condition. Did you want to save your remaining time? Certainly, Your Honor. Good morning, Your Honors. May it please the Court, Mark Tack on behalf of the United States. I do believe that the mandatory supervision in this case is closer to the Sampson line of cases. And I think that there's some language in Sampson that is actually helpful to the Court's determination that is included. Sampson and also Griffin discussed the continuum of government sanctions on an individual, parole, excuse me, prison on one side, community service on the other. And I kind of want to put these cases in line as to where I think they fall, starting from the greatest to the least. First is going to be prison. Next I would say jail. Next I would say it would be defendant's mandatory supervision following a period of jail time. And I think, and then I would go into Knight's probation. And there's a parenthetical that I think is helpful for the Court that is in Sampson that kind of addresses how the Supreme Court was thinking of probation at that time when it was deciding the Knight's case. And that's on page 850. And it states that federal supervisory lease, in contrast to probation, is meted out in addition to not in lieu of incarceration. And I think that's telling from the standpoint of the Supreme Court that they view probation as something in lieu of incarceration, which isn't really this case. And so I think this case falls closer to prison. It falls closer to incarceration. And Sampson is really the case that decides it. Is it true that the only reason the officers pursued this case was because of the search condition they found? I would agree that this was a random search of the individual, that there was no articulable suspicion, reasonable or unreasonable. It was a completely random search. So it rises and falls on whether the condition per se is enforceable without more. Correct. Yes, Your Honor. Is this case different from Lara or is it covered by Lara? I think it's completely different from Lara. Because of the cell phone aspect? Exactly, Your Honor. And I think on page 611 of the Lara decision that starts in sum, it addresses two points, that there's a substantial privacy interest in cell phone data, unlike other types of property, and also that the condition was not clear and unequivocal. So the privacy interest was not waived or diminished. And so I think those are the two main holdings of Lara that are not applicable in this case. I think we're not dealing with a cell phone and we're not dealing with an ambiguous condition. Well, I guess what bothers me about this case is that the hotel room was not his. It was his companion's hotel room. It was rented in her name. She paid for it. Yes, he had an access key to the room, but oftentimes guests of hotel, people who take out rooms, they give an extra key to their guests. So I guess I'm a little bit hesitant to conclude that this even meets the term of the search condition, that the premises were under his control. And I'm thinking about the case Granberry that we decided a few years ago. The search condition there said property under your control, and we held there that that wasn't clear enough to allow them to search the parolee's girlfriend's apartment because of the substantial privacy interest she had. And it seems to me that's very similar to this situation. So maybe you could respond to that concern. Sure. First of all, if he didn't have a privacy interest in the apartment, then he wouldn't have standing to raise his issue here. He did, because he was an overnight guest. But that doesn't mean the premises were under his control for purposes of the search condition. That's exactly what we held in Granberry. Granberry, for all we knew, the person was an overnight guest of his girlfriend at the apartment. And the government, you guys tried to argue that, well, it wasn't his residence, because it was the same thing, residence or property under your control, but it was, you know, he had a key to the girlfriend's apartment. And we said no, that that wasn't good enough. And so why is that different from this case? I think it's different because it's a hotel room. And I think multiple times when more than one person can have control over a hotel room, and just because it was rented in her name doesn't mean that he also didn't have control. I think the fact that he had a key in his possession, that does show some ownership of control, that he was allowed to be there without her being present at that particular room. He also said he was staying there also. So I think those things go to show that he did have some, at least some control over that room. If he's able to go in and leave without anyone else being there, there aren't spaces in the hotel room like rooms that are more private than others. It was just one hotel room. It's also true of the apartment in Granberry. And I guess what I'm trying to focus you on in terms of the reasonableness of this inquiry is that one of the factors we said was important there is that unlike in a lot of these searches, where it's the defendant's own property, like a cell phone even, there's a third party who's totally innocent, presumably, whose privacy interests are going to be completely trampled upon if this search goes forward. And it seems to me, sure, people share hotel rooms all the time, but this was her room. She had a fully undiminished privacy interest in that room. And I guess why wouldn't we take into account the invasion of her privacy interest when deciding whether in the totality of the circumstances this particular search was reasonable or not? I think a hotel room is different. And I think the reason why is that generally one person rents a hotel room. It's not a shared lease like an apartment maybe where more than one person is renting it. So it is entirely possible that the two of them got together and decided, okay, we're renting it together, but one person's name ends up being on the hotel room. And I think the small location of the hotel room, the reason that his items were strewn all over the hotel room, which is what the officer said, I think that shows dominion and control over that hotel room in addition to his girlfriend or the female that was present for it. So I don't think the mere fact that she rented it is going to be to show that she's the only one that has dominion over that. And I think a hotel room is a little bit different than an apartment in that respect. So if this had been the girlfriend's apartment and we had the exact same facts, exact same search condition here, you would say no go? I think I'd have to look at the facts a little bit more, Your Honor. What else is there to know? It's the girlfriend's apartment. It's not a hotel room. He has a key, just like here, and presumably his stuff is strewn about the apartment because he's been staying there for a couple of days. You would say that those are premises under his control and the officers can just go in and tear the place up. I think the key is pretty indicative of whether somebody has control over a particular place or not. And I do think that there is a distinction between a hotel room and an apartment, but I think the key, in my opinion, is what allows for dominion and control where that person would be able to enter and leave without anyone else being, without the person that's on the lease or the name of the hotel room being present. So on this issue, does it rise or fall on what we think premises under my control means? I think so, Your Honor. I think that's where it is, and I think a hotel room where he's got the key is a premises or residence that he has control over because he's not only, because a number of his items were present in the hotel room. So you think premises is different from residency? I think they both overlap, Your Honor, and I think both are covered under hotel. The premises gets you out of the property problem in terms of any ambiguity at least, correct? Correct. Yes, Your Honor. But going back to Judge Watford's question, in our previous case, if I understood your answer, you would indicate that if it was the girlfriend's apartment, he would still have control over the premises if his stuff was there and strewn about and he had been there, and he had a key. I would think that he would have control over common areas of that apartment, and that's what I would argue. There certainly may be rooms in that apartment that are off-limits to a particular person, and in this case, the police officer specifically only looked at common areas in the hotel room, and so that's the area where I think the defendant would have control over. I thought there were no uncommon areas. I would agree with that. I just know the police officers in this case said that they found the items in common areas of the hotel room. That was their terminology, common areas? Yes, Your Honor. In other words, they didn't dig around in her suitcase or something like that? Specifically, they stated that they left anything that looked like a female's property alone, and they didn't go and rummage through that property. I see that my time is almost up. I want to address one other item that was raised by the defendant in his brief with respect to some sort of articulable suspicion that should be read into this condition, and I think that's not supported by the case law. I think it's also not supported by the way the defendant addressed and believed that this search condition to include, and what I'm referring to is when the initial interaction between him and Officer Gutierrez, when Officer Gutierrez asked him, may I search you, the defendant responded, no, I'm on probation. I'm sorry, he said, yes, I'm on probation subject to search terms, and so certainly I think his view of that condition was that he had no expectation of privacy and that the officer could conduct a random search of him. I think that statement is pretty dispositive with respect to his understanding of that search condition. In addition, the district court imposed almost How does that figure in as a legal matter? What if he misunderstood it and he said, no, you have to have some suspicion? Would that then be controlling? I don't think so. So it doesn't really matter? I think it does matter that the fact that he said, I understand, yes, I agree to the search, because he followed up saying that I'm on probation subject to search and seizure. So I think that's just as indicative. He's been on these search conditions for at least seven years at the time. He understood what that search condition meant. Is the good faith exception at all involved in this case? I would agree it is, Your Honor, and I see my time is almost up. I think in this particular case the officers acted in accordance with appellate precedent in their jurisdiction, the Medina case and the Brown case, and that that allowed random searches based on these same types of search conditions. And so the police officers certainly did not act intentionally. They didn't act with reckless disregard. They believed at that time that they were authorized to do that random search based on that search condition. So it wouldn't serve the purposes of the exclusionary rule to apply it in this case. That's your argument. I would agree, Your Honor, yes. Thank you. Thank you. How about that, Mr. Tzadok? I haven't seen you in a long time, by the way. It's nice to see you again. It's my pleasure, Your Honor. Is the good faith exception involved in this case and would it apply? I don't believe so. Laura, even though it involves cell phones, addressed this exact point, saying that with respect to probationers you could not rely on those California cases, the exact same ones that the government just cited because they were not clear enough. There was not a bright line. There still has to be some reasonable analysis, and there is no bright line. You cannot say that all probationers subject to a search condition may be searched at any time. Setting aside the cases, what did the officer discover when he checked into the defendant's situation? That we don't know, and that's part of the government's burden to justify the search and show that it was reasonable. If there's something that the officer knew. The officer checked and discovered. We know the officer checked enough to find that he was on probation and subject to a search condition. That's all we know. And that's not enough to engage the good faith exception. That's your argument. That's correct, Your Honor. The point being that it can't be that the only thing that is off limits to a search is a cell phone. Under all circumstances and all facts, all searches of probation are subject to search conditions. Well, the cell phone case came after, didn't it? Came after the search in this case. In this case. Yes. Yes. Yes, it did. So when you're putting yourself in the shoes of the officers at the time, what case law are they violating? Well, especially after the cell phone case. No, no, no. Explicitly. Oh, excuse me. The cell phone case is after the search. But the cell phone case itself, there was no relied on. There was the exact same precedence. There was no Riley before the cell phone case. So it's not like, I mean, there was no Riley before the search in Laura. So the exact same precedence that we're relying on here. Control. Nothing's changed. There was nothing subsequent or before that said to the officers, if a man's on probation, you have carte blanche to search him. What's your response to the argument that notwithstanding the fact that the girlfriend, whoever she was, rented this hotel room. Nonetheless, there were premises under his control that are specifically in the condition. What's your answer to that? I just defer to Judge Watford's argument. Quite truthfully, I'm not. It seems to me that. Why was that? Why would this not be a premise under his control? That's where he was staying. It's arguably a premise under his control, except that. Except you don't like the result. Yes, but and I also I also believe that this is so far removed from any legitimate search in terms of time, place, reason. That it's like authorizing robing bands of police officers. Anytime they don't like the way someone looks. You're right. Without the condition. I mean, the case doesn't even get filed. That's correct, but we can't read that condition under the Constitution so broadly as to permit any conduct at all by police officers. What this what this allows is. And I'm not saying it happened here, but maybe Officer Gutierrez just didn't like the way Cervantes looked. Or maybe he thought of that. It allows the kind of racial profiling that is abhorrent to the Constitution. I think we have your argument in mind, and we've given you about a few extra minutes here that we didn't give your co-counsel. So I appreciate the argument from both counsel. The case of the United States versus Cervantes is submitted. Thank you.
judges: Trott, McKeown, Watford